Filed 8/26/21  Velie v. Hill CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KAREN VELIE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ADAM HILL et al.<br><br>    Defendants and Respondents. | 2d Civil No. B299267<br>(Super. Ct. No. 17CV-0622)<br>(San Luis Obispo County) |

Karen Velie appeals an order granting respondents' special motion to strike her complaint as a strategic lawsuit against public participation.  (Code Civ. Proc., § 425.16.)[1]  Respondent Adam Hill's[2] disparaging remarks about Velie and his calls to boycott her online news site prompted her to sue both Hill and

---

[1] We cite the Code of Civil Procedure unless noted otherwise.

[2] Hill died suddenly while the appeal was pending.  Justin P. Karczag, lead counsel for appellant, passed away one month later.

respondent County of San Luis Obispo. We conclude her allegations fall squarely within the anti-SLAPP statute. Velie also fails to establish a probability of prevailing on the merits of her claims against either respondent. We affirm.

FACTUAL BACKGROUND

Velie is a journalist and former owner of Cal Coast News (CCN), a website reporting on issues of public interest in San Luis Obispo County. Hill served on the county's Board of Supervisors from 2008 through August of 2020. The two first butted heads in 2012 when CCN accused Hill of impersonating a political opponent during a phone call. Later that year CCN reported that Hill's girlfriend, the head of a local social services agency, used donated gift cards for personal purchases. Hill accused Velie of sensationalizing the incidents and using poor journalistic standards. In turn, Velie accused Hill of pressuring local businesses to cease advertising on CCN's website and convincing a local talk radio host to stop interviewing Velie on air.

Their animosity grew over the next four years. Posts mocking and criticizing Velie began appearing in online forums such as Topix and Reddit. A Facebook page called "Cal Coast Fraud" dedicated itself to discrediting CCN, with Hill frequently the first to "like" and share links to the page's posts. Members of these groups mocked Velie and baited her with comments about her mental health and family troubles. Velie suspected Hill and his "left-leaning" political allies orchestrated the attacks in retaliation for reporting on the supervisor's purported misdeeds. She also suspected Hill used his influence to place her three grandchildren into foster care and to restrict her access to county records. Hill denied the claims. He chided Velie in private emails for "ax-grinding vindictiveness" and told her to seek mental health services.

2

PROCEDURAL BACKGROUND

Velie filed a claim under the California Tort Claims Act against the County for "loss of income, damage to reputation and severe emotional distress" caused by Hill's alleged acts. (Gov. Code, § 910 et seq.) The court rejected her claim. She then filed a federal civil rights action against both Hill and the County under 42 U.S.C. section 1983. Her complaint also included five state law causes of action: (1) intentional interference with prospective economic relations; (2) intentional interference with contractual relations; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) violation of state civil rights under the Bane Act.[3] The County's liability is vicarious, premised entirely on Hill's acting in the course and scope of his employment.

The district court dismissed her section 1983 claim with prejudice. It declined supplemental jurisdiction over the five state claims and dismissed them without prejudice. Velie then re-filed her state claims in this action. The trial court entered judgment in respondents' favor after granting their special motion to strike the complaint under California's anti-SLAPP statute. (§ 425.16.) Velie appeals.

DISCUSSION

*1. Anti-SLAPP Motions and Standard of Review*

"A SLAPP suit has been described as 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 672.) Such suits are subject to a special motion to strike, i.e., an anti-SLAPP motion, if one or more causes of action "aris[e] from any act of [a defendant] in furtherance of the [defendant's] right of petition or free speech . . . unless the court determines that the

---

[3] The Bane Act is found at section 52.1 of the Civil Code.

3

plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)  The motion is thus a two-step process.  The defendant must first show the challenged claim arises from an act in furtherance of their right of petition or free speech in connection with a public issue. (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1174.)  If the defendant meets this threshold, the plaintiff must then establish a probability of prevailing on the claim.  (*Ibid.*)  We review the trial court's anti-SLAPP ruling de novo.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

*2. Velie's Causes of Action Arise from Acts*
*in Furtherance of Hill's Right of Free Speech in Connection*
*with a Public Issue*

Velie's allegations fall primarily into three categories:  (1) Hill pressured local business owners to stop advertising on CCN; (2) he described Velie as mentally ill in emails and online posts; and (3) he criticized CCN as dishonest and inaccurate.  We conclude all were "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e).)  Though frequently *ad hominem*, Hill's statements conveyed his personal belief that Velie and her website were not trustworthy sources of information about local politics, current events, or him.  (See *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138 [defendant's accusations of illegal activities at local business were made in public interest as a warning about plaintiff's trustworthiness].)  Those allegations outside these categories, such as Hill's ordering county officials to take her grandchildren into foster care, are ancillary to her speech-focused claims.

4

### 3. *Velie's Probability of Prevailing on Her Claims Against the County*

The Government Tort Claims Act requires a plaintiff to present personal injury claims to a public entity "not later than six months after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).) While Velie's allegations of Hill's misconduct span the better part of a decade, we limit our review to purported wrongdoing after October 14, 2015, i.e., six months before she filed her government claim on April 14, 2016. Her causes of action against the County accruing before the earlier date are barred. (See *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 960 ["Failure to comply with [GTCA's] claim presentation requirements is fatal to a later cause of action"]; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1199 ["the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period"].)

The evidence supporting the complaint's interference causes of action during this six-month period is limited to Café Roma's cancelling its advertising on CCN because of "harassment from Hill." Velie provides no details about CCN's contract with this advertiser or whether Velie herself lost money because of Café Roma's cancellation. In addition, Hill's urging local businesses to boycott CCN is a constitutionally protected activity. (See *Environmental Planning & Information Council v. Superior Court* (1984) 36 Cal.3d 188 [environmental group's call to boycott businesses advertising in plaintiff's newspaper considered protected free speech].) Velie's first and second causes of action thus fail to state claims against the County.

Support for the complaint's causes of action for emotional distress (the third and fourth) and for violation of state civil rights (the fifth) is similarly tenuous. While admittedly crass and

5

distasteful, many of the Facebook posts about Velie are attributed to Hill's alleged "agents" rather than Hill himself. Velie cites no evidence he coordinated these online attacks other than her opinion that they "mimic" the subject matter or tone of Hill's prior insults. Other statements she characterizes as evidence are either irrelevant[4] or misinterpret the source documents.[5] As discussed next, those posts Hill appears to have actually written or shared during this period are also protected by his First Amendment right to free speech. They cannot form the basis of the County's vicarious liability. (Gov. Code, § 815.2, subd. (b) ["Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability"].)

### 4. Velie's Probability of Prevailing on Her Claims Against Hill

A two-year limitations period applies to Velie's interference and emotional distress claims against Hill. (§§ 335.1; 339, subd.

---

[4] For example, Hill's emails to radio host David Congalton were not directed at Velie directly or indirectly. Warnings received from Steffi Sooter that her former boyfriend, developer Ryan Petetit, wanted to "get rid of" Velie do not describe statements made by Hill. Velie's account of the wife of a "close ally" of Hill's saying the county did not consider CCN a "real press" is likewise attributed to a different person.

[5] For example, Velie states Hill falsely accused her of "stalking and harassing his family" in a December 17, 2017 email to Richard Shanbrom. The email refers to Hill needing police protection at his home because of a threat made by an unidentified person. He blames CCN for lying and "stir[ring] up hate" but does not accuse Velie of threatening him and his family directly.

(1).)  The same applies to her civil rights claim under the Bane Act because it relies on allegations identical to those supporting her personal injury claims.  (See *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 760 [Bane Act cause of action based on alleged violation of free speech sounds in tort and subject to limitations period for personal injury actions].)  As above, we confine our review to Hill's alleged wrongdoing during the limitations period.  This began two years prior to Velie filing her complaint in the District Court on October 20, 2016, i.e., October 20, 2014.  (See *Addison v. State of California* (1978) 21 Cal.3d 313, 319 [though dismissed for lack of jurisdiction, federal case equitably tolled limitations period where "plaintiffs thereafter promptly asserted that cause in the proper state court"].)

The claims against Hill fare no better than those against the County.  The complaint's allegations of disparaging posts by third parties on Reddit and CalCoastFraud are based on the unsubstantiated theory that Hill coordinated the attacks through a network of agents and allies.[6]  The same is true of more troubling allegations about her family dog's poisoning and the police department's subsequent complacency.  Hill's urging former state senator Sam Blakeslee to stop advertising on CCN in late 2014, like his later appeals to Café Roma, were protected free speech.  Lastly, his alleged failing to respond in good faith to

---

[6] Velie states in a declaration that "ongoing harassment and problems with interference with advertisers" scuttled the potential sale of CCN after she received "an offer of between $6 million and $8 million" from two businessmen.  This vague statement is the only evidence proffered in support of the offer's existence and viability.  She introduces no evidence suggesting Hill "knowingly interfered with [Velie's] expectancy" of CCN's sale.  (*Della Penna v. Toyota Motor Sales, U.S.A.* (1995) 11 Cal.4th 376, 393.)

Velie's requests under the Public Records Act in January of 2015 should have been addressed using that law's enforcement provisions. (See Gov. Code, § 6258 ["Any person may institute proceedings for injunctive or declaratory relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter"].)

*5. Velie's Challenges to the Trial Court's
Evidentiary Rulings*

Velie argues the trial court erred when it sustained evidentiary objections she might have overcome by the time of trial. (See *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949 ["To strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes"].) The point is moot because the excluded evidence, even if admitted, would not have affected our conclusions.

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.          YEGAN, J.

8

Ginger E. Garrett, Judge
Superior Court County of San Luis Obispo

_____


Encore Law Group, Justin P. Karczag, Muhammed T. Hussain, and Patty Chen, for Plaintiff and Appellant.

Strumwasser & Woocher, Frederic D. Woocher and Dale K. Larson, for Defendant and Respondent County of San Luis Obispo.